NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SPACEMAKER SYSTEMS, INC.** | **Civil Action No. 24-9279 (GC)** |
| **Plaintiff,** | |
| **v.** | **MEMORANDUM OPINION** |
| **FRAZIER INDUSTRIAL COMPANY,** | |
| **Defendant.** | |

**BONGIOVANNI, United States Magistrate Judge**

Currently pending before the Court is Plaintiff Spacemaker Systems, Inc.'s ("Spacemaker") motion seeking leave to amend its Complaint to add allegations regarding its existing clams for invalidity and unenforceability of the patents-in-suit, and to add additional claims related to Defendant Frazier Industrial Company's ("Frazier") MOLE IQ mark, explicitly referencing the MOLE IQ mark in the proposed First Amended Complaint (the "FAC"), including in its trademark infringement claim, and adding claims for false advertising and cancellation of the MOLE IQ trademark application in the FAC. (Docket Entry No. 60). Frazier opposes Spacemaker's motion. (Docket Entry No. 73). The Court has fully reviewed the arguments made in support of and in opposition to Spacemaker's motion. The Court considers Spacemaker's motion without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Spacemaker's motion to amend is **GRANTED**.

I.    BACKGROUND AND PROCEDURAL HISTORY

The factual background of this matter is well known to both the parties and the Court. As such, it is not restated at length herein. Instead, the Court focuses on the procedural history relevant to the instant motion to amend. As the parties know, the procedural history of this matter is somewhat unique as the case was initially filed essentially as a breach of contract case by Frazier against Spacemaker in the Superior Court of New Jersey, stemming out of the parties' Distribution Agreement regarding the Pallet Mole system. Spacemaker removed the matter to this Court on September 19, 2024. (*See* Docket Entry No. 1). The removal was premised on Spacemaker's Counterclaims, which include federal claims for declaratory judgment of invalidity and unenforceability of U.S. Patent Nos. 10,589,929 (the "'929 Patent") and 11,046,513 (the "'513 Patent") (collectively, the "patents-in-suit") as well as a trademark infringement claim, along with other state law contract claims. (*See* Docket Entry No. 1-6). Ultimately, the District Court remanded all of Frazier's claims as well as all of Spacemaker's state law counterclaims to the Superior Court of New Jersey, leaving only Spacemaker's counterclaims for declaratory judgment of invalidity and unenforceability of the patents-in-suit and trademark infringement active in this matter. *See* Order of 10/23/2025; Docket Entry No. 29.

Given the remaining claims, on November 8, 2024, the District Court entered a Text Order restyling the docket so that Spacemaker would be identified as the plaintiff and Frazier as the defendant. *See* Docket Entry No. 33. The District Court also extended Frazier's time to respond to Spacemaker's claims until December 13, 2024. *Id.* Frazier complied, filing its Answer with Affirmative Defenses and Counter Counterclaim on December 13, 2024 (Docket Entry 36), which it later amended on January 6, 2025. (Docket Entry No. 39). Spacemaker responded to Frazier's Counter Counterclaim on February 10, 2025. (Docket Entry No. 45).

The Court held the Initial Pretrial Conference in this matter on February 10, 2025. On April 28, 2025, the Court entered an Amended Scheduling Order, setting November 2, 2025 as the deadline for all motions to amend the pleadings or to join new parties, and March 27, 2026 as the deadline for the close of fact discovery. Docket Entry No. 47. On July 14, 2025, the deadline for moving to amend the pleadings was extended until November 17, 2025. Consent Order of 07/14/2025; Docket Entry No. 52. Spacemaker filed the instant motion to amend on November 13, 2025. Given how the matter was restyled, Spacemaker, in moving to amend, seeks permission to file the FAC, rather than amended counterclaims.

In the FAC, Spacemaker seeks to add factual allegations regarding its existing claims for invalidity and unenforceability of the patents-in-suit, add factual allegations specifically referencing Frazier's MOLE IQ product and Frazier's false advertising, add the MOLE IQ mark to its trademark infringement claim, add a claim for false advertising related to the MOLE IQ mark, and add a claim for cancellation of the MOLE IQ trademark application. Spacemaker argues that all the relevant factors under Federal Rule of Civil Procedure ("Rule") 15's liberal standard favor permitting it to amend. Spacemaker argues that there has been no undue delay. Instead, Spacemaker claims it only learned of the existence of the MOLE IQ product in May 2025 and that it promptly sent Frazier a cease and desist letter in June 2025, which Frazier rebuffed. Spacemarker argues that it then sought discovery from Frazier related to the MOLE IQ product, to which Frazier was initially slow to respond and ultimately, in November 2025, made clear it would not produce anything related to the MOLE IQ product because that product was not explicitly referenced in Spacemaker's pleading. (*Id*. at 9-10). Spacemaker notes that it would have been impossible for it to have included allegations regarding the MOLE IQ product in its initial Counterclaims, which Spacemaker filed on September 19, 2024, because Frazier had not begun using the MOLE IQ mark

3

at that time. (*See id*. at 9). Regardless, Spacemaker notes that it promptly moved to amend just months after learning of the existence of the MOLE IQ product and within the deadline set by the Court for filing motions to amend. (*Id.*)

Additionally, Spacemaker claims that Frazier will not be prejudiced if Spacemaker is allowed to file the FAC. In this regard, Spacemaker notes that when it filed its motion, over four months of fact discovery remained available to the parties, providing them with ample time to conduct discovery on the MOLE IQ product and mark. Further, Spacemaker points out that while the substantial completion of document production deadline is fast approaching, no depositions have been taken or noticed. Moreover, Spacemaker highlights that Frazier has been on notice since June 2025 that "Spacemaker considered MOLE IQ to be infringing" and has been on notice for months that Spacemaker "was seeking documents pertaining to MOLE IQ." (*Id.* at 10). Furthermore, Spacemaker theorizes that the volume of discovery to be produced by Frazier regarding MOLE IQ is "likely to be modest" given that Frazier only recently started selling products under said name. (*Id.*) Additionally, given that Spacemaker's claims for invalidity and unenforceability have always been in this case, Spacemaker argues that the full scope of discovery with respect to same has always been at issue and will not be impacted by its proposed amendments. Thus, Spacemaker contends Frazier will not be prejudiced by its proposed amendments.

Further, Spacemaker argues that its proposed amendments are not futile. Spacemaker notes that its claims related to the invalidity and unenforceability of the patents-in-suit have been part of this litigation since the outset and Spacemaker only seeks to add factual allegations regarding same; as such, Spacemaker maintains these claims are not clearly futile. More specifically, regarding the substance of its inequitable conduct claims, Spacemaker argues that it has adequately identified the "specific who, what, where when and how of the material misrepresentation and omission

before the USPTO[,]" outlining in detail the failures of inventor Domenick Iellimno and attorneys at Dilworth & Barrrese, LLP, "to disclose to the USPTO during prosecution that the Pallet Mole offered for sale more than one year before the filing date had magnets." (*Id*. at 12 (citing FAC at ¶¶ 29-48)). Spacemaker also claims that it has adequately plead materiality based on its allegations regarding the examiner's rejections, which Spacemaker argues "make clear that it would have been material to the examiner to know that Frazier had been offering for sale and selling a 'security device compris[ing] an electromagnet adapted to electromagnetically adhere to the tines of the forklift fork' prior to March 26 2017." (*Id*. (citing FAC ¶¶ 28-30). Spacemaker contends that its detailed allegations establish that Frazier offered and sold Pallet Moles with magnets more than a year before the priority date, but did not disclose the same to the USPTO and that said information is "material because the devises anticipate or render obvious the asserted claims, including where the examiner had rejected the claims due to magnets in the prior art." (Spacemaker Reply at 6; Docket Entry No. 79 (citing FAC ¶¶ 13-25, 29-30, 83-87, 105-108). Spacemaker also argues that it has alleged sufficient facts from which a court may reasonably infer a specific intent to deceive. (*Id*. at 7 (citing FAC ¶¶ 26-27; 31-33; 88-96, 110-118)). As a result, Spacemaker claims that the Court should reject Frazier's conclusory arguments that Spacemaker's inequitable conduct claims are futile, "in particular where Frazier never moved to dismiss Spacemaker's initial inequitable conduct claims" to begin with and determine that its proposed amendments are not clearly futile. (*Id.*)

In addition, with respect to its proposed false advertising claim, Spacemaker argues that:

> To make a claim for false advertising under the Lanham Act, a plaintiff must plead the following elements: (1) that the defendant has made false or misleading statements as to [its] own product . . . ; that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decision; (4)

5

that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

(Spacemaker Br. at 7-8 (quoting *GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, 197 F. App'x 120, 122 n. 1 (3d Cir. 2006) (quoting *Ditri v. Coldwell Banker Residential Affiliates, I*nc.*,* 954 F.2d 869, 872 (3d Cir. 1992) (internal quotation marks omitted))). Spacemaker maintains that it has met this standard, alleging "that Frazier has made false or misleading statements by publishing its posts comparing the Pallet Mole and Mole IQ product, that the claims are false and misleading, that the deception is material in that it would likely influence consumer's purchasing decisions, that the advertised goods travel in interstate commerce, and that there is likelihood of injury to Spacemaker." (Spacemaker Reply at 5 (citing FAC ¶ 146-157)). Spacemaker asserts that this is sufficient at the pleading stage where its factual allegations are presumed to be true and where it need not provide evidence of its claims. Thus, Spacemaker argues that its proposed false advertising claim is not futile.

Similarly, Spacemaker maintains that:

> To adequately plead a claim for Cancellation of Registration for likelihood of confusion under 15 U.S.C. § 1119, a plaintiff must show that the defendant's marks: "so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the good of the applicant, to cause confusion, or to cause mistake, or to deceive."

(Spacemaker Br. at 8-9 (quoting 15 U.S.C. § 1119(d))). Spacemaker asserts that it adequately sets forth these allegations in the FAC, thus rendering its proposed amendments non-futile. (*See id.* at 12 (citing FAC at ¶¶ 145-169). Further, Spacemaker contends whether the mark PALLET MOLE is generic and whether the marks PALLET MOLE and MOLE IQ are confusingly similar are questions of fact that cannot be addressed in the context of a motion to amend. (Spacemaker Reply

6

at 4). Spacemaker also notes that "Frazier provides no legal authority for the proposition that Spacemkaer's motion 'strips the USPTO of its administrative function' to consider opposition to Frazier's pending MOLE IQ mark" and points out that "courts have routinely held that parties may cancel pending trademarks through district court actions." (*Id*. at 5-6 (citations omitted)). As such, Spacemaker argues that this claim is likewise not clearly futile and that its motion should be granted.

Frazier opposes Spacemaker's motion to amend. In the first instance, Fraizer claims that Spacemaker's motion to amend is brought in bad faith in an effort to restrict Frazier from lawful competition and to conduct a fishing expedition. Frazier maintains that "Spacemaker's proposed inequitable conduct allegations are baseless and frivolous, and its new causes of action for trademark infringement based on Frazier's MOLE IQ mark and false advertising are calculated to burden Frazier with additional and undue expense, distract from the core issues, and chill Frazier's ability to compete in the market." (Frazier Opp. Br. at 16). Frazier contends that this is especially true with respect to Spacemaker's proposed cancelation claim, which clearly underscores Spacemaker's anticompetitive intent, as Spacemaker could pursue said relief before the USPTO. (*See id.*) Indeed, Frazier argues that that Spacemaker has brought this claim in bad faith to harass and curtail Fraizer from lawful competition, improperly divesting the USPTO of its function to consider opposition to registration of Frazier's MOLE IQ mark. (*See id.* at 18).

In addition, Frazier argues that Spacemaker's proposed amendments would cause undue delay and undue prejudice to it. Frazier takes particular issue with Spacemaker's proposed new inequitable conduct allegations. Frazier argues that Spacemaker was aware that inequitable conduct must be pled with particularity yet waited 14 months with no adequate reason for the delay to attempt to add the allegations that would purportedly provide the required particularity. (*See id.*

at 17). Frazier contends that it would be burdensome to permit this amendment now as the discovery deadlines would have to be amended as would Spacemaker's invalidity contentions, which were already amended once, and Frazier's responses thereto. Frazier claims that all deadlines would have to be extended by at least 9 months to accommodate the new allegations and contentions, likely delaying the resolution of this matter until 2027. (*See id*.)

Further, Fraizer claims it will also be unfairly burdened if Spacemaker is permitted to add its three new causes of action associated with Frazier's MOLE IQ mark for trademark infringement, false advertising, and cancellation of the MOLE IQ mark because these causes of action involve a completely different set of facts and would "require Fraizer to expend significant resources to conduct additional discovery regarding new facts, conduct additional likelihood of confusion surveys, engage additional experts, i.e., to address the false advertising claim, and prepare for trial on new unelated causes of action resulting from the amendments." (*Id*. at 17-18).

Moreover, Frazier maintains that Spacemaker's proposed amendments are futile. Fraizer argues that Spacemaker's inequitable conduct claim fails to meet Rule 9's heightened pleading standard because Spacemaker's proposed new allegations do not describe in sufficient detail any failure of Frazier to disclose material information or an intent to deceive the USPTO on the part of any specific individuals at Frazier. (*See id*. at 19-20). Frazier also argues that Spacemaker's trademark claims for trademark infringement, false advertising, and cancellation of Frazier's MOLE IQ mark are futile. On this point, Frazier argues that Spacemaker simply asserts in conclusory fashion that the MOLE IQ mark and the PALLET MOLE mark are so similar to cause confusion to the public but does not support this bald assertion. Frazier maintains that Spacemaker's claims would not survive a Rule 12(b)(6) motion because Frazier did not claim the word "pallet" in its mark and the word "mole" has become a generic term in the industry. (*See id*.

at 20). Moreover, Frazier argues that Spacemaker's false advertisement claim fails because Spacemaker merely alleges that "Frazier's statements contained in the advertisement at-issue are false" without providing "any details as to who, what, when, where, or why the advertisement was purportedly false, much less evidence of its claims." (*Id*. at 21). Thus, Frazier claims that Spacemaker's motion to amend should be denied; though it argues if the motion is granted, the schedule should be extended to account for the additional work that will be required by the amendment.

## II.    ANALYSIS

### A.  Standard of Review

Under Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Third Circuit has shown a strong liberality in allowing amendment, favoring decisions on the merits rather than on procedural technicalities. *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3rd Cir. 1984); *see Cureton v. National Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3rd Cir 2001) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)). Although the decision to grant or deny leave to amend is within the discretion of the Court, that discretion must be exercised consistent with the liberal standard embodied in Rule 15(a)(2). *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 886 (3d Cir. 1992); *see Rutter v. Rivera*, 74 F. App'x 182, 186 (3d Cir. 2003). Leave to amend under Rule 15(a) should be granted in the absence of undue delay or bad faith by the movant, prejudice to the movant, or futility of amendment. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

### B.  Undue Delay and Undue Prejudice

In determining whether there has been undue delay, courts consider both the length of the delay and resulting prejudice to the opposing party. *Long*, 393 F.3d at 399. Although significant

9

lapses of time may weigh against the moving party, delay alone is insufficient to deny amendment absent a showing of prejudice, bad faith, or dilatory motive. *See id* at 399; *Cureton*, 252 F.3d at 273 (3d Cir. 2001); *see also Adams*, 739 F.2d at 868; *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). The burden of establishing undue prejudice rests with the non-moving party. *Long*, 393 F.3d at 400. This burden may be met by showing that allowing an amendment "would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent [the opposing party] from bringing a timely action in another jurisdiction." *Id.*

The Court finds that there has been no undue delay, nor will Frazier be unduly prejudiced by Spacemaker's proposed amendments. Frazier only filed its trademark application for the MOLE IQ mark on May 21, 2025, of which Spacemaker became aware on May 30, 2025. (*See* Spacemaker Br. at 3). Less than 2 weeks later, Spacemaker sent Frazier a cease and desist letter, "demanding that Frazier cease all infringing uses of PALLET MOLE and MOLE IQ, as well as remove the false advertising posts on its website and LinkedIn comparing its product to the Pallet Mole." (*Id.*) Frazier declined to comply; its position being that there was no likelihood of confusion and that its posts were truthful. Spacemaker then attempted to obtain discovery from Frazier to determine the extent of Frazier's alleged trademark infringement, but Frazier has refused to produce any documents relating to MOLE IQ. After meeting and conferring, most recently on November 7, 2025, it became clear that Frazier would not produce any information related to the MOLE IQ mark, as its position is that said mark is outside the scope of this matter, not referenced or raised in these pleadings, which is limited solely to the patents-at-issue and the PALLET MOLE mark. As a result, Spacemaker filed the instant motion to amend less than a week after the parties' meet and confer and prior to the expiration of the deadline for motions to amend to be filed.

10

While Spacemaker certainly could have filed its motion sooner, it did not act unreasonably in attempting to first navigate the issue with Frazier without motion practice; nor did Frazier act unreasonably in how it responded to Spacemaker's requests. While reasonable parties can disagree regarding the proper course of action, here, the approximate 5-month delay from when Spacemaker first learned of Frazier's alleged infringing use to when Frazier filed the instant motion is not excessive.

Further, the Court finds that Frazier will not be unfairly prejudiced if Spacemaker is permitted to add factual allegations regarding its existing claims for invalidity and unenforceability of the patents-in-suit, add factual allegations specifically referencing Frazier's MOLE IQ product and Frazier's false advertising, add the MOLE IQ mark to its trademark infringement claim, add a claim for false advertising related to the MOLE IQ mark, and add a claim for cancellation of the MOLE IQ trademark application. While the addition of Spacemaker's factual allegations and claims regarding the MOLE IQ mark involve new facts, *i.e.*, the MOLE IQ mark, Spacemaker has set forth a tenable relation between Frazier's use of that mark and the parties' current dispute related to the PALLET MOLE mark. Moreover, while the addition of these allegations and claims will require the parties to engage in some additional fact and expert discovery related to the MOLE IQ mark and new claims, given the limited time the MOLE IQ mark has been in play, the expenditure of resources associated with same should not be significant, despite Frazier's conclusory statements to the contrary. In addition, Spacemaker's claims for invalidity and unenforceability of the patents-in-suit, including Spacemaker's inequitable conduct claims, have always been part of this litigation. As such, the full scope of discovery related to same has always been at issue. Further, the Court recently extended the case schedule and can make additional

adjustments if warranted to accommodate the parties' needs.  As a result, the Court finds that no unfair prejudice will result if Spacemaker is permitted to file the FAC.

### C.  Futility

A court may deny a motion for leave to amend where the proposed amendment would be futile. *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). An amendment is considered futile if the amended complaint fails to state a claim upon which relief could be granted. *Travelers Indem. Co v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir 2010). The futility of an amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss under Rule 12(b)(6). *Id.*

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on "'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Bell Atl. Corp.*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)). Importantly, unless a proposed amendment is "clearly futile . . . denial of leave to amend is improper." *Morton Intern., Inc. v. A. E. Staley Mfg. Co.*, 106 F.Supp.2d 737, 745 (D.N.J.

12

2000). Further, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

The burden of establishing futility is on the party opposing the amendment and, "given the liberal standard applied to the amendment of pleadings," that burden is a "heavy" one. *Pharm. Sales & Consulting Corp. v. J.W.S Delavau Co.*, 106 F. Supp. 2d 761, 764 (D.N.J. 2000). "If a proposed amendment is not clearly futile, the denial of leave to amend is improper." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468-69 (D.N.J. 1990). "This standard does not necessitate that parties undertake substantive motion practice concerning the proposed claim or defense." *Id*. "Instead, it requires only that the claim or defense have an adequate basis in fact or law, not being frivolous." *Id*.

Here, the Court finds that Frazier has not met its heavy burden of establishing the futility of Spacemaker's proposed amendments. Initially, the Court notes that Spacemaker's inequitable conduct claims were asserted in Spacemaker's original Counterclaims (s*ee* Spacemaker Counterclaims ¶¶48-75; Docket Entry No. 1-6); they are not new to the proposed FAC. Instead, through the instant motion to amend, Spacemaker merely looks to add factual allegations providing additional support for its originally plead claims. In the context of a motion to amend, the Court only considers "whether the <u>amendment</u> itself is futile, <u>not</u> the claims in the original [pleading]." *Danise v. Saxon Mortg. Serv., Inc.*, Civil Action No. 15-6062 (JLL) (JAD), 2016 WL 4769733, at *8 (D.N.J. Sept. 12, 2016) (Emphasis in original). Frazier never challenged Spacemaker's inequitable conduct claims, and they are part of this case, having been litigated since its inception. The proposed factual allegations Spacemaker seeks to add regarding Frazier's alleged inequitable

13

conduct claims have no real bearing on the futility analysis as factual allegations, in and of themselves, cannot be said to be futile and, as just noted, the Court does not consider the viability of Spacemaker's originally plead claims in the context of current motion.

Turning to Spacemaker's trademark infringement claim regarding the MOLE IQ mark, the Court notes that to establish a claim for trademark infringement a party "'must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion[.]'" *Beasley v. Howard*, 623 F.Supp.3d 434, 440 (D.N.J. 2022) (quoting *Belmora LLC v. Am. Priv. Label Prod. LLC,* Civil Action No. 19-15365, 2020 WL 10181735, at *3 (D.N.J. May 12, 2020)). In the FAC, Spacemaker alleges that it (1) has a valid and legally protectable mark, *i.e.*, the PALLET MOLE mark; (2) owns the PALLET MOLE mark; and (3) Frazier applied for and uses the MOLE IQ mark, which Spacemaker alleges is confusingly similar to its PALLET MOLE mark. (*See* FAC ¶¶ 132-44). The Court finds that Spacemaker's allegations are sufficient to raise Spacemaker's right to relief to be plausible on its face and, therefore, not futile. Furthermore, the Court finds that Frazier's arguments regarding the purported generic nature of the term "mole" and/or the dissimilarity of the marks "PALLET MOLE" and "MOLE IQ" are fact-based inquiries not suited for consideration in a motion to amend.

Similarly, the Court finds that Plaintiff has adequately set forth a claim for false advertising.

> To establish a claim for false advertising, a Laham Act plaintiff must prove five elements:
>
> 1) That the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

14

*Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014) (Citations omitted). Spacemaker sets forth all of these elements in the FAC. Spacemaker outlines the allegedly false and misleading statements Frazier made, such as the statements Frazier published on its website and on LinkedIn in May 2025 comparing the MOLE IQ with Spacemaker's PALLET MOLE. Spacemaker asserts that Frazier's statements are false and misleading and that the deception is material and likely to impact consumers' purchasing decisions because the statements relate to the purported comparative quality and characteristics of Frazier's new MOLE IQ product versus Spacemaker's PALLET MOLE product. Additionally, Spacemaker alleges that the advertised goods travel in interstate commerce and that there is a likelihood of injury to Spacemaker in the form of lost customers, damaged goodwill and consumer deception. (*See* FAC ¶¶ 146-157). While Spacemaker does not provide specific evidence of its claims or identify a specific customer that has been confused or deceived by Frazier's postings, the Court finds that the same is not required at this stage of proceedings. Instead, Spacemaker's allegations are sufficient to render its proposed false advertising claim non-futile.

Last, the Court considers Spacemaker's claim seeking the cancellation of Frazier's MOLE IQ trademark application pursuant to 15 U.S.C. § 1119. No court from the District of New Jersey has squarely considered whether, in an action involving a registered trademark, a district court has jurisdiction to consider challenges to a party's trademark application; though in *Zany Toys, LLC v. Pearl Enters, LLC*, the District Court acknowledged that:

> [C]ourts have recognized exceptions to the general rule preventing courts from reviewing trademark applications under § 1119 "when there is a close nexus between the issues in the pending application proceeding and those in the federal court dispute involving the registered mark." McCarthy on Trademarks, § 30:113.50 (citing *Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*, 97–C–155–C, 1998 U.S. Dist. LEXIS 11919, at *31–32, 1998 WL 766703

15

> (W.D.Wis. June 24, 1998)). In other words, some courts have found that federal courts may appropriately "determine the registerability of an as-yet unregistered mark in an action in which a registered mark is involved as well," if there "is a sufficient nexus between the application proceeding and the dispute involving the registered 1588 mark." *Johnny Blastoff,* 1998 U.S. Dist. LEXIS 1119, at *31–32, 1998 WL 766703 (citing *Continental Connector Corp. v. Continental Specialties Corp.,* 413 F.Supp. 1347, 1349 (D.Conn.1976) ("[E]ven under § 1119, a court, exercising jurisdiction over a suit involving a registered mark, would not be expected to entertain unrelated claims for registration of other marks.")).

Civil Action No. 13-5262 (JAP) (TJB), 2015 WL 404644, at *6 (D.N.J. Jan. 28, 2015).

While the *Zany Toys* court ultimately determined that it lacked jurisdiction over the plaintiff's claim for denial of registration of defendant's mark and civil liability based on fraud on the USPTO, it did so largely because neither party in said matter held a registered mark:

> Overall, however, it is the undisputed fact that neither party has any registrations for any of the marks at issue that prevents Plaintiff's claims from falling into this exception to the general rule constricting § 1119 claims to registered marks. Accordingly, this Court cannot exercise jurisdiction over the unripe claims found in Count V.

*Id.* at *7.

In contrast to *Zany Toys*, Spacemaker holds a registered mark. Further, taking Spacemaker's allegations as true, there is a close nexus between the issues in Frazier's pending application proceeding and those in the instant matter involving the registered mark. Under these circumstances, the Court finds that Frazier has failed to carry its heavy burden of establishing that Spacemaker's proposed cancellation claim is clearly futile.

### D. Bad Faith

A proposed amendment is properly denied if it is brought in bad faith. "[Th]e bad faith inquiry focuses on the moving party's 'motives for not amending . . . earlier,' and whether there is 'extrinsic evidence' – aside from the delay itself – that indicates bad faith." *Adams v. DMG Park, LLC*, Civil Action No. 21-17442 (MCA) (LDW), 2025 WL 2962484, at *7 (D.N.J. Oct. 20, 2025) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).

Frazier has suggested that Spacemaker has brought its motion to amend in bad faith to engage in a fishing expedition, curtail lawful competition, harass Fraizer, and improperly divest the USPTO of its function to consider opposition to registration of Frazier's MOLE IQ mark. (*See* Frazier Opp. Br. at 16, 18). However, as outlined above, the Court has already determined that Spacemaker's proposed new claims are not clearly futile. The Court has likewise determined that there is no undue delay or undue prejudice. Under these circumstances, the Court finds that Frazier's assertions, which are not supported by any extrinsic evidence, are not enough to establish that Spacemaker's motion is tainted by bad faith.

As a result, the Court grants Spacemaker's motion to amend.

## II.    CONCLUSION

For the reasons stated above, Spacemaker's motion to amend is **GRANTED**. An appropriate Order follows.

Dated: March 23, 2026

s/Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
